Good morning, Your Honours. May it please the Court, Sassoon Dalbanyan on behalf of Petitioner Suleymanyan. Your Honours, in this case, our main argument being made is that this case is more in line with Malti versus Najmabadi for several reasons. First and foremost, in Najmabadi, the Court cited, the panel cited, stating that the country condition report was a carbon copy virtually of the newer one submitted. In this case, we have cited in our brief, particularly on pages 23 and 24, and Your Honours, I forgot to mention, I would like to reserve three minutes for rebuttal. In this case, the country conditions, there were no reports of beatings of protesters, and particularly to the extent that they were in 2015 under the regime. The regime had initially taken over in 1998, so it was fairly nascent when respondents initially applied for asylum. So there is a big difference in the country conditions, and also the fact that in the 2014 human rights report, Your Honour, it states that police beat protesters. I could cite exactly. No, you're just saying the prior report did not have any mention of the beating of police protesters. Is that your argument? Did not have any mention of government specifically breaking up rallies, beating protesters, and so forth. And especially, even though there were some human rights violations already at that time, admittedly, it was not to that level. And the Ninth Circuit, this Court has recognized that a worsening of country conditions may also be a changed circumstance, if coupled with personal circumstances. So this is the human rights watch report you're referring to? As well as the other articles that we submitted with the motion. That's correct. But not the country conditions report? Oh, no, I'm specifically referring to the country conditions report from 2014. And also, Your Honours, the BIA cited to Tofighi in stating that it was conclusory and speculative, whether a respondent would suffer harm and whether the Armenian government was spying on individuals who were protesting in the U.S. and so forth. This differs from Tofighi's decision, because it is not conclusory and speculative. He saw them specifically taking pictures. His daughter, who the entire… Counsel, is it your view that the BIA was required to credit your client's declaration as true? Your Honour, we would argue that, under the established case law, it should be presumed to be true, the declaration, unless there is something under limsicle inherently unbelievable. What about a prior adverse credibility determination? That's a good question, Your Honour. Basically, with regard to the prior adverse credibility determination, the judge did state that his testimony was vague and ambiguous. The record is very limited in questioning. That attorney has already been disbarred. This is neither here nor there. But basically, it was not… There were no inconsistencies pointed out, other than the fact that there were some events, the burning of the house and so forth, that were not mentioned in his statement. Counsel, you're not relying, in this case, on what your client testified to in the original hearing, because your view is that the circumstances that are present now weren't present then, correct? That is correct, Your Honour. That is correct. But that doesn't erase the fact that a prior panel found… A prior judge found your client to be discredited in his testimony. So why doesn't that adverse credibility determination provide a basis for removing the presumption on the declaration? Again, Your Honour, the adverse credibility… The case law of the circuit, the Supreme Court has recognized the importance of motions to reopen, although they're generally frowned upon. But the importance is to protect the rights if new circumstances arise. The adverse credibility was primarily hinged upon a couple of incidents that were not mentioned in the written statement. I'm not revisiting the adverse credibility. I'm just stating that it doesn't make it inherently unreliable, his sworn declaration. It at least establishes prima facie case to let the immigration judge observe his demeanor and decide if he is credible or not. Let me ask you one other question, going back to your prior argument. Would you point us in the record to where the country conditions report that you're relying upon talks about the beatings and the breaking up of protests? Where is that language specifically? Yes, Your Honour. Your Honour, during the rebuttal, I will mention the page number, but we have the citation to it where it states that police continue to deploy torture to obtain confessions and report citizens… I'm asking you where the source document is. I will cite to that on rebuttal, Your Honour. And that was not in the initial country report, as I stated. I thought it was, and I thought it was in the human rights report. That's why I asked you that question. Oh, I see. Yeah, I will look into that. So basically at this point, Your Honour, with regard to the differences again in Malti, the individual had personal changes. And in this case, he was targeted. His daughter specifically called him crying, and the family, it's not in the record, but the family eventually had to flee as well. So there is personal changes and made relevant by the changes in the country, the significantly worsening country. So we can't find that there were changed country conditions and changed personal conditions unless, or rather the BIA could not make that finding, unless it accepted your client's declaration. Is that correct? That is correct. Again, the case law, Your Honour, is that under Limsical, it must be assumed to be true or at least presumed to be true. So as I read your brief, it seemed like your primary arguments were that the BIA erred in failing to grant the motion to reopen, and in concluding that your client's evidence didn't establish a prima facie case of relief from removal. There were some mentions late in the brief of the argument you're alluding to now with respect to the BIA erring by refusing to accept your client's declaration, unless it was inherently not credible. Do you think that you fairly presented that issue in the brief and that the court should consider it now? I think, Your Honour, we mentioned the issue in the brief, and it's the court's case law, the circuit's case law, and we're arguing it presently. The court should consider it. We perhaps could have addressed it in more detail. I agree. However, yes, the court can and should consider it. Well, isn't it sort of a foundational argument? If the BIA doesn't accept that declaration, then your client has only the change to the country report and I believe some articles, some other things he submitted, but the key to his claim was in his declaration, wasn't it? The key to his claim was in his declaration, but the BIA, yes, that is correct, and the declaration is sworn to, and there is basically the background documents, and we did address it in the brief. I understand we didn't address it in the brief. Shouldn't it have been an issue statement and addressed front and center? I think it's around page 27 in your brief. There's an aside, a brief mention. So is Your Honour stating that, asking whether we have waived the issue by not bringing it up? Well, if you haven't fairly presented the issue, is the government prejudiced in responding to that? What is your argument that we should consider that issue? Your Honour, if the court feels that we did not sufficiently address the issue, I suggest, I don't know if the court is amenable to it, but we can do supplemental briefing on the issue in light of the arguments we are making today. Did the government address it in its brief? I believe they did, Your Honour, tangentially, but I'll go ahead and look at it. So I would like to reserve the remainder of my time. Thank you. We'll hear from the government. May it please the Court. My name is Jacqueline Shea, and I represent the Attorney General of the United States. To prevail on a motion to reopen and the proceedings on the basis of country change conditions, Petitioner needed to establish three burdens. The Board acted within its discretion when it denied his motion to reopen for failing to meet these burdens. I ask this Court to come to the following two conclusions. One, the Board reasonably considered the uncontested adverse credibility determination and declined to credit Petitioner's allegations without corroboration. But on the credibility determination, isn't our case law that if, as a result of that, a particular issue in the prior proceeding is found contrary to what Petitioner's argument is, that the BIA can find that binding but not that it can just generally, because the Petitioner was found not credible in an initial proceeding, find him again not credible where he's raising new arguments? Is there any case that stands for that proposition? Yes, Your Honor, and I think the Board relied on it in this case. It was the Tufani case. I apologize if I'm pronouncing it wrong. But in that course, this Court has held that an underlying conclusive adverse credibility determination rendered the evidence of country change conditions not material. But isn't that because that issue was specifically raised before the immigration judge, and here the Petitioner's argument is these issues weren't raised originally because they're new and they came up after the original hearing? I see your question. I understand now, Your Honor. Well, I would say it distinguished from that case. It was kind of a mixed credibility determination, where here it's a clear adverse credibility determination. So what case supports your argument? The Tufani case, Your Honor. But that's a different case, though. If the adverse credibility determination is made based on an issue that also exists in the motion to reopen, then I think Tufigi does support your argument. But what if it's a different issue that's raised in the motion to reopen, that there was no adverse credibility determination made on? Do you have a case that addresses that scenario? Your Honor, I think the other case would be the Nahandi case, where the Court noted in that case the perverse incentive for granting a motion to reopen based on significant change in personal conditions, as we have in this case. Yes, we do have a new allegation raised in this case, but it's reasonable under the circumstances for the Board to consider that prior adverse credibility determination because his new claim in this case is based solely on his declaration. In support of his motion to reopen, he had his application, his declaration, his country of condition reports, and some news articles. But his claim actually comes from his declaration that he is a prominent activist in the radio community. But, Counsel, the BIA, A, didn't credit the declaration as true, correct? Yes, Your Honor. And, B, they found that corroborative evidence here was required. Yes, Your Honor. And aren't both of those things wrong, that corroborative evidence isn't required, that they can make this determination just on the declaration, and that they're required to credit it as true? I think, Your Honor, you're getting to the case that says that unless it's inherently unbelievable. Yes. Yes, Your Honor. And I do think that our court has said, in numerous cases, has stated that finding. However, like in Malti, in that case, again, there was no adverse credibility determination in that case, where he only had, in that case, he had a declaration and the country of condition evidence like this case. But the court noted specifically in a footnote that he didn't argue anything unbelievable in that case, hinting at that if there was something brought up to give the court something, if there was some credibility determination underlined in that, that the court could consider that. I'm sorry. Counsel, if the declaration is credited, do you lose? Not entirely. Our argument, yes, would be much more difficult. But, again, in this case, the board did find, secondly, that he didn't make the Prima Fosse case. And I will also note that his primary argument, that the board actually, that there was changed conditions to begin with in this case, Your Honor. It is his burden to prove that. And in his brief, it seemed to be some continuing conditions. I don't think he met his burden in that respect, Your Honor. So you're saying without the declaration he didn't meet his burden, but with the declaration he did? Or even with the declaration? Even with the declaration, Your Honor, you could, on the other independent ground, whether there was changed country of conditions in this case, he didn't meet his burden in that as well. I was going to ask you to back up for a moment. I didn't fully understand your answer to Judge Bennett's question about the declaration. If the BIA was required to find that the contents of the declaration were inherently not credible and did not make that finding, wasn't that an error? No, Your Honor, because, again, they also cited the Supreme Court case in Abudu. And in that case, the Supreme Court said motions to reopen, like motions for a new trial, based on newly discovered evidence, are disfavored. But there's also case law that says that you don't hold a petitioner on a motion to reopen to the higher standard that they would have at the merits hearing, because it's simply a motion to reopen and then have a merits hearing. And I understand the motion to reopen is disfavored and there are time limits and that he is arguing a particular exception as a reason to reopen, but there's still the case law, even if the motion to reopen is disfavored, that says the BIA has to accept the declaration unless they find it's inherently not credible. And, Your Honor, in Abudu, they have a similar line where they say that. But, again, the Supreme Court, they said the appropriate analogy is, you know, a motion for a new trial where the moving party bears the burden, that heavy burden. Your answer, then, is no, the board did not err in not crediting the declaration or finding it inherently not credible. No, that's not your answer, or no, they didn't err. They didn't err. What's your answer? Your Honor, no, they didn't err by considering that. Yes, that is your answer. Faced, Your Honor, what they had here, the entire declaration was his new claim and there was nothing supporting it. It's reasonable for the board here to consider the adverse credibility determination that was not contested or rebutted in this case. His allegations, again, were very generalized. Fourteen of the 17 paragraphs in his declaration simply recount general country conditions information. None of the articles corroborate that they were spying on him or keeping track of his actions. And his claim here, Your Honors, could be easily corroborated, but it was not. This court has said it's hard to get declarations from family members possibly out of the country, but here he could have got a declaration from friends and relatives in the United States to corroborate that he was a prominent activist in the community, and that didn't happen here. Again, this is a solid adverse credibility determination that I.J. found here. It was based on omissions, inconsistencies, general statements. The board also, going to your point, Your Honor, too, about the issue specifically changed. As well, the board noted in this case that the I.J., the underlining finding, was not targeted by the Armenian government. In the underlining finding, he couldn't even identify, as in this case, the government that was targeting him. But the statute says that for the motion to reopen, he can either submit an affidavit or other evidentiary material. So it doesn't seem as if he was required to submit the corroborating evidence that you're arguing would have been easy for him to procure. Your Honor, and that is if you have, I ask this court to consider that if he was credible. I mean, in this case and all the cases we have, Malti, Bazin, all those cases there were no adverse credibility findings. In this case, we have the adverse credibility findings where it's reasonable under these circumstances for the board to not completely erase what happened before, but to consider all of the evidence in light of making its decision. Would it be fair for the court to conclude that the government was aware of the issue or the argument that it was an error for the BIA to either find the affidavit or the declaration inherently not credible or to accept it, and that you responded to that in your brief? Your Honor, we didn't fully respond to it in our brief because it wasn't raised in his opening brief. But it was cited, that case, the Lembski case, I believe, was cited in his brief. It was cited, so the case I think reasonably could be considered. But, yes, also considering that we did not fully able to address the issue. But you responded. We didn't fully respond in our brief on that. What does that mean, you didn't fully respond? So you partially responded? Your Honor, I guess we didn't directly respond to the issue because it wasn't framed by him in his opening brief. However, similarly, I see that I'm out of time, Your Honor. Please complete your answer. I'm sorry, Your Honor? Please complete your answer. Yes, Your Honor. I just think it wasn't completely raised, so we weren't specifically able to address it. However, we did generally address it. Thank you, counsel. Rebuttal? Yes, and I know I have a little bit of time, so I'll be quick, Your Honor. Your Honor, in the 2014 Human Rights Report, to answer your question, on page When you say Human Rights Report, that's different than the Country Conditions Report, correct? It's the Country Report on Human Rights Practice State Department Report. It's the State Department Report? Yes. Okay. That's the one you were asking for, correct? Right, right. And that one on page 112 of the transcript, Your Honor, paragraph 3. ER, sorry. What's the ER? AR 112. Okay. And then What does it say? Does it support your argument? It states police allegedly continue to employ torture to obtain confessions and reportedly beat citizens during arrests and interrogation. How is that different than the prior report? The prior report from 2002, I believe, did not have that the police committed torture towards detainees. But also, it goes further on page 119 and discusses specific AR 119, discusses two or three instances and states, if I may cite, Your Honor, that police impeded peaceful demonstrations by activists who frequently demonstrated over a variety of social and human rights problems. Police committed multiple procedural violations in detaining persons. And then it states cases where there were police detentions and abuses in custody. So basically, these were not mentioned in the prior State Department Human Rights Report. I see that I'm out of time unless the panel has more questions. And to answer your other question, Your Honor, I looked at the government's brief. It did not address it. I looked at our brief. Yes, it could have been addressed in more detail, but we did cite to the case and we did state that it has to be accepted. Counsel said they did address it. Did you hear her? She said not fully, but I did look at the brief. I don't see it. Thank you, Counsel. Thank you, Your Honor. Thank you both, Counsel. The case just argued is submitted for decision.
judges: Rawlinson, Bennett, Bade